**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Northern Division)

FILED _____ ENTERED
LODGED _____ RECEIVED

JUL 1 3 2018

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| | |
|---|---|
| KATHLEEN AND LARRY VIEZEL Individually*<br>and as Parents and Next Friends of<br>-   REDACTED -, a Minor       *<br>12 Armour Road<br>Mahwah, NJ  07430       * | |
|    Plaintiffs       * | |
|    v.         .      * | |
| **WESTERN MARYLAND HEALTH SYSTEM**   *<br>**CORPORATION**<br>12400 Willowbrook Road       * | Case No. _____ |
| Cumberland, Maryland  21502 | |
|    <u>Serve On</u>:    J. Matthew Gilmore       * | **Jury Trial Demanded** |
|                21 Prospect Square<br>               Cumberland, MD 21202     * | |
|    Defendant       * | |
|                            * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### COMPLAINT

Plaintiffs, Kate and Larry Viezel, individually and as parents and next friends of

**REDACTED -,**, a Minor, by their attorneys, Daniel J. Miller and The Law Offices of Daniel J.

Miller, L.L.C. and Marc Seldin Rosen and The Law Offices of Marc Seldin Rosen, LLC hereby

sue the Defendant Western Maryland Health System Corporation , and state as follows:

### PARTIES, VENUE, AND JURISDICTION

1.    **REDACTED -,** a minor, was born on May 13, 2015.

2.    Kate and Larry Viezel are **REDACTED -,**'s natural parents.  The Viezel Plaintiffs

are citizens of the State of New Jersey and reside in Bergen County, NJ.  Kate and Larry Viezel

bring this action individually and as **REDACTED -,**  parents and next friends.

3.      At all times relevant hereto, the Defendant Western Maryland Health System Corporation (hereinafter referred to as "WMHS"), has been a Maryland business entity acting through actual and/or apparent agents, servants, and/or employees, including, but not limited to its nursing staff and triage staff, Nurse Lisa Heidorn and others.   WMHS is engaged in the practice of medicine, including emergency medicine and treatment, and nursing and triage services.

4.      Venue is proper in The United States District Court for the District of Maryland (Northern Division) pursuant to 28 U.S.C. § 1331 (a)(1) because the amount in controversy exceeds $75,000.00 and the Plaintiffs and Defendant are citizens of different states.

5.      Further, the damages are in excess of the jurisdiction of the District Court for Allegany County.

## FACTS COMMON TO ALL COUNTS

6.      Plaintiff Kate Viezel became pregnant with twins, REDACTED -,, who were born in Ridgewood, New Jersey on May 13, 2015.  The Viezel family currently resides in Bergen County, New Jersey.  The pregnancy was unremarkable for twins other than standard bedrest and delivery was uncomplicated at 37.5 weeks.  There were no significant health concerns and the children had no signs of developmental delays.

7.      On Wednesday, June 24, 2015, at six weeks old, - REDACTED - and her family were in Deep Creek Lake, Maryland when her parents became concerned about her health.  - REDACTED -'s appetite had decreased, and she was more difficult to rouse for feedings.  Kate Viezel called - REDACTED -'s pediatrician who recommended that - REDACTED - be seen by a local pediatrician if she did not improve.  There were no available local pediatric health care providers and after a fresh temperature reading of 94 degrees was obtained and reported, -

2

REDACTED -'s pediatrician suggested that - REDACTED - be taken to the emergency room at Western Maryland Health System because it had an on-call pediatrician.

8.      Mrs. Viezel called the Emergency Room department at WMHS to request that Emergency Room staff notify the on-call pediatrician so as to avoid any delay in appropriate treatment. The WMHS staffer who spoke with Mrs. Viezel stated the hospital would not call the pediatrician until the baby had been examined by the staff physician and triage nurses.

9.      - REDACTED - arrived at WMHS at or about 1405 that day.  She was pale with mottled skin, had thrown up what little food she had ingested, and had subnormal temperature and labored breathing.  - REDACTED - was in significant distress.

10.     Nursing notes by Nurse Lisa Heidorn at 1413 indicate that vital signs were being obtained and that - REDACTED - was pink all over.  She was in clear distress.  A technician took - REDACTED -'s temperature, who upon obtaining a reading of 91 degrees Fahrenheit believed that the thermometer was malfunctioning and advised the Viezels he would return shortly with a new thermometer.  He did not return and upon information and belief did not inform anyone of this initial reading.  Although the medical records indicate the temperature was taken twice, only one reading appears in the hospital record.

11.     The family, including - REDACTED -, were next sent to the waiting room with no further triage or treatment of any kind.

12.     Despite the knowledge of a temperature reading of 91, and the clear and apparent distress - REDACTED - was in, no further vital signs were taken or obtained unit 1516, over an hour later.  A nurse hurried into the waiting area, admitted she was unaware there was a baby in distress waiting for help, took her temperature again and observed - REDACTED - to have a weak cry, that she was limp with blue limbs that were not noted in the record at time of admission.

3

Another temperature reading was taken and showed that - REDACTED -'s temperature was 91.1 degrees.  - REDACTED -'s oxygen saturation was not obtainable and her heart rate was noted to be 200, indicative of severe prolonged supraventricular tachycardia (normal for a child her age is 80-160).  This could and should have been determined when - REDACTED - first presented to the Emergency Room.  At this point - REDACTED - was taken to a "trauma" room where she was managed with IV fluids, antibiotics and supplemental oxygen, but by then - REDACTED - experienced what was the first of three cardiac arrests, swelling of the brain and significant anoxic episodes.

13.     Initial laboratory studies obtained from blood drawn when - REDACTED -'s IV was placed and by arterial stick some time later were extremely abnormal and consistent with infection and severe metabolic acidosis.

14.     Had the nursing and physician staff at WMHS properly and appropriately examined, triaged and treated - REDACTED - upon arrival, as the standard of care required, the cardiac arrests, swelling of the brain and anoxic episodes, and their consequences would have been avoided.  A nursing triage assessment that complied with the standards of care would have indicated that - REDACTED - required immediate physician attention and intervention.  As a direct and proximate cause of the aforesaid delay in care, - REDACTED - sustained physical damages, including but not limited to persistent and permanent developmental delays, and her family has sustained and will in the future sustain substantial and significant burden of medical expenses for treatments and care.

15.     Subsequent to her substandard treatment at WMHS, - REDACTED - was transferred to West Virginia University Hospital ("WVU") where she was treated for swelling of the brain, hypoxia, and possible seizures.  She was prescribed phenobarbital and further diagnosed

4

with low tone, which prompted referral to Early Intervention Services.  - REDACTED - was noted at WVU to have sustained "Trauma to all organs including her brain." Her MRI revealed bilateral edema, focused in the superior regions of the neocortex where restricted diffusion was noted, particularly in the superior regions of both the left and right parietal lobes of her brain.

16.    The Defendant, WMHS: (a) negligently failed to appropriately and timely triage - REDACTED - in the emergency room on June 24, 2015; (b) negligently failed to appropriately and timely treat - REDACTED - in the emergency room despite her being in significant distress; (c) negligently failed to accurately document and treat - REDACTED -'s subnormal temperature readings; (d) negligently attributed - REDACTED -'s serious health challenges to malfunctioning equipment, when it was not; (e) negligently failed to seek immediate intervention by an emergency medical physician; and f) negligently left - REDACTED - without triage, undiagnosed and untreated in the Emergency Room waiting room for over an hour while clearly on notice of the significant distress she was in.

17.    As a direct and proximate result of the Respondent Health Care Providers' negligence and breaches in the standard of care, - REDACTED - and her parents now face a lifetime of substantial extraordinary medical and other care and support expenses, lost wages, lost earning capacity, and loss of enjoyment of life, as the anoxic brain injuries and cardiac arrests will have an extraordinary permanent effect on - REDACTED -'s over-all physical and mental health and well-being.

18.    As a direct and proximate result of the Respondent Health Care Providers' negligence and breaches in the standard of care, pursuant to section 13-102 of the Family Law Article of the Annotated Code of Maryland and otherwise in law and equity, - REDACTED -'s parents are now and will be legally and otherwise financially responsible for the above-referenced

5

extraordinary expenses, care, and support of - REDACTED - for the rest of her life.  - REDACTED - too will experience a qualitatively altered future as the consequential aspect of raising a developmentally challenged child will be devastating to her emotionally and will interfere with her wage earning capacity, along with extraordinary medical expenses.

<u>Count I</u>

**(Medical Malpractice against WMHS)**

19.     The Plaintiffs repeat and incorporate herein by reference all of the allegations above as if fully set forth herein.

20.     In the performance of the above-referenced medical care or lack thereof, the Defendant WMHS owed Mr. and Mrs. Viezel and - REDACTED - a duty to exercise that degree of care and skill, which reasonably competent health care providers would have exercised under similar circumstances.

21.     The Defendant WMHS, individually and/or through its actual and/or apparent agents, servants, and/or employees, breached the aforesaid duty of care, and was negligent in that it, among other things:

        A. Failed to timely and properly evaluate - REDACTED -'s symptoms and recognize their significance;

        B. Failed to timely evaluate, triage, diagnose and treat - REDACTED -'s declining condition in the Emergency Room;

        C. Failed to appropriately evaluate, triage, diagnose and treat - REDACTED - in the Emergency Room;

        D. Failed to timely and appropriately communicate, consult and refer - REDACTED -'s condition to an emergency physician;

E.  Reduced cognitive and mental capabilities;

F.  Physical issues;

G.  Mental issues, including, but not limited to mental health care;

H.  Behavioral issues, including, but not limited to, neurobehavioral abnormalities and Attention Deficit Disorder;

I.  Medical expenses;

J.  Medication expenses;

K.  Therapy expenses;

L.  Other costs and expenses related to - REDACTED -'s ongoing medical care, including but not limited to, travel, lodging and other associated costs to obtain needed medical treatment.

M.  Care expenses; and/or

N.  Lost wages and wage earning capacity.

23.  As a direct and proximate result of the above-mentioned deviations from the applicable standards of care and negligence by the Defendant, - REDACTED - has experienced and will experience severe pain, suffering, and emotional distress, significant extraordinary costs, including medical and other costs, and significant loss of earnings, and lost earning capacity.  She will require support and care for the rest of her life.

24.  As a further direct and proximate result of the above-mentioned deviations from the applicable standards of care by the Defendant WMHS, the Plaintiffs have experienced and will experience severe emotional distress, severe anxiety and post-traumatic stress disorder. Additionally, Plaintiffs Kate and Larry Viezel will be legally and otherwise responsible for the

above-referenced extraordinary costs and expenses for the care and support of - REDACTED - for the rest of her life.  She will also suffer from lost earning capacity.

WHEREFORE, the Plaintiffs Kate and Larry Viezel, individually and as parents and next friends of - REDACTED - , a minor, requests that judgment be entered their favor against Defendant WMHS for compensatory damages in excess of $75,000.00.

DANIEL J. MILLER (Fed. Bar No. 29862)
THE LAW OFFICES OF DANIEL J. MILLER, LLC
26 South Street
Baltimore, Maryland 21202
(410) 244-1155
dmiller@triallaw.com

MARC SELDIN ROSEN (Fed. Bar No. 02589)
THE LAW OFFICES OF MARC SELDIN ROSEN
26 South Street
Baltimore, Maryland 21202
(410) 244-1155
mrosen@triallaw.com

Counsel for the Plaintiffs

**JURY TRIAL DEMANDED**

Plaintiffs request that this case be tried by a jury.

Daniel J. Miller